UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HOTEL ROSLYN, LLC f/k/a ELLEN & NILS, LLC and SKOBO, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AMGUARD INSURANCE COMPANY, a Pennsylvania corporation,<br><br>Defendant. | Case No. 2:22-cv-01344-TMC<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

This is an insurance coverage case arising from water damage at the Hotel Roslyn in Roslyn, Washington that occurred around the time the hotel transferred owners (and thus, insurance policies). Before the Court are Plaintiffs Hotel Roslyn, LLC and SKOBO, LLC's motion for partial summary judgment (Dkt. 39) and Defendant AmGuard Insurance Company's motion for summary judgment (Dkt. 45). The parties have filed responses and replies to both motions and the Court held oral argument on March 25, 2024.

Plaintiffs seek summary judgment on their claim that AmGuard breached the terms of Hotel Roslyn's insurance policy (Dkt. 41-2) by denying all coverage. *See* Dkt. 39. AmGuard moves to dismiss all claims because it asserts that the water damage at issue "commenced"

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 1

before coverage under its policy began. *See* Dkt. 45 at 1. AmGuard also argues that even if coverage was triggered, Plaintiffs seek damages beyond the policy's coverage. *Id.* at 19–20.

Having considered the parties' briefing, oral argument, and relevant law, the Court concludes that (1) the undisputed facts show at least some water damage commenced after the inception of AmGuard's policy, meaning AmGuard breached the contract by denying all coverage; but (2) Plaintiffs' claim for "consulting fees" to a family member for his help in managing the repairs is not covered by AmGuard's policy.[1] The remaining disputes between the parties—including how much water damage commenced after AmGuard's policy began, the value of the damage incurred, and whether AmGuard acted in bad faith or in violation of its statutory obligations—must be resolved by a jury. The Court therefore GRANTS Plaintiffs' motion for partial summary judgment and GRANTS IN PART and DENIES IN PART AmGuard's motion for summary judgment.

I.    BACKGROUND[2]

On December 30, 2021, siblings Ellen and Adam Edenkrans closed on their purchase of the Hotel Roslyn in Roslyn, Washington through their wholly owned limited liability company, SKOBO, LLC. *See* Dkt. 40 at 1; Dkt. 46 at 9–12. The Ellen & Nils, LLC—now known as the Hotel Roslyn, LLC—was formed to operate the hotel. *Id*. The Hotel Roslyn, LLC had obtained an insurance policy for the hotel from AmGuard with coverage beginning on December 30 (the same day the sale closed). Dkt. 41-2 at 9. The policy covered physical loss or damage to the hotel property except for anything specifically excluded by the "Exclusions" and "Limitations"

---

[1] AmGuard also moved for summary judgment on Plaintiffs' claim for coverage for the expense of replacing the Hotel's roof; but in their response, Plaintiffs confirmed they "are not seeking coverage under the Policy for the replacement of the roof." *See* Dkt. 45 at 17–19; Dkt. 51 at 2.

[2] The Court's recitation of the facts is based on the evidence in the record that is undisputed.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 2

sections of the coverage form (commonly referred to as an "all-risk" policy). *See* Dkt. 41-3 at 7. The policy covered "loss or damage commencing . . . during the policy period," from December 30, 2021, to December 30, 2022. *Id.* at 30; Dkt. 46 at 85. In relevant part, the policy limitations excluded loss of or damage to:

> The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, *unless*:
>
> (a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or
>
> (b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

Dkt. 41-3 at 7 (emphasis added). In other words, the policy *did* cover damage to "[t]he interior of any building or structure . . . [that] is caused by or results from thawing of snow, sleet or ice on the building or structure." *See id.*

The AmGuard policy also provides "Extra Expense" coverage for "necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property at the described premises." Dkt. 46 at 43. The policy defines Extra Expense, in relevant part, as "expense incurred" to: (a) "avoid or minimize the suspension of business and to continue 'operations'"; (b) "minimize the suspension of business if you cannot continue 'operations'"; or (c) "repair or replace any property" or "research, replace or restore the lost information on damaged 'valuable papers and records' to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage . . . ." *Id.*

In September 2021, before Plaintiffs purchased the hotel, they hired a contractor to conduct a property inspection. *See* Dkt. 40-2 at 7. The inspection did not flag any moisture stains or leaks in attic spaces; defects in the roof; or moisture in the floors, walls, or ceilings of the

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 3

hotel. *See e.g.*, *id.* at 18, 21, 24, 34. Similarly, the previous owner of the hotel did not observe or receive reports from staff about any damage while present at the hotel on December 29 and 30, 2021, the last days before transferring ownership to the Edenkranses. Dkt. 41-1 at 6–16. In the two weeks leading up to December 30, more than half of the hotel's ten rooms were generally occupied each day. *See* Dkt. 40-1 at 3–4. And with this occupancy rate, the previous owner also did not recall any reports of water damage from housekeeping staff, the maintenance crew, or hotel guests in the month before closing the sale. *Id*. at 16–17.

Photographs of the hotel taken by the insured around the time the damage was discovered show a large buildup of snow and ice on the hotel's roof. Dkt. 46 at 102. The hotel's previous owner also recalled seeing a "large amount of icicles and snow" on the exterior of the hotel in late December. *See* Dkt. 41-1 at 18. It was in this context that Plaintiffs took legal title to the hotel on December 30, 2021, with housekeeping staff first alerting Ellen Edenkrans to wet carpet in a second-floor suite on December 31. *See Dkt*. 40 at 1; Dkt. 41-10 at 2.

On January 1, 2022, additional water intrusion was found in two other rooms and by January 2, water damage had been discovered in seven rooms in the hotel. *Id.* at 4–6. On January 3, water damage was discovered in hotel common areas and in another room on January 4. *Id.* at 8–10. Plaintiffs submitted a claim to AmGuard for the water damage on January 3, Dkt. 41-12 at 2, and AmGuard began an investigation. A report to AmGuard on January 27 from the Guardian Group, Inc., which had been hired by AmGuard to inspect the damage, concluded that: "The interior damages . . . are consistent with water intrusion from the main roof and possibly intermediate roofs (porches). The water intrusion is a result of a phenomenon known as ice damming." Dkt. 46 at 104.

Ice damming occurs when water freezes on roof edges and causes a buildup of ice that prevents water from running off the roof. *See* Dkt. 46 at 104. The buildup of meltwater against

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 4

the "ice dam" can result in the intrusion of water into the rest of the building. *Id*. AmGuard's investigator noted that "frozen conditions prevented inspection of the underlayment" in the roof, but they otherwise "did not observe evidence of a long-standing or recurring water intrusion issue." *Id*. at 105.

In several communications shortly after the damage was discovered (and while the Edenkranses and the prior owners were disputing who should be responsible), persons close to the Plaintiffs suggested the damage began before the transfer of ownership. For example, on January 18, 2022, Plaintiffs' insurance agent emailed AmGuard stating that they believed the water damage had started "well before" Plaintiffs took ownership of the hotel. *Id*. at 190. The Edenkrans siblings' father, Lars Karlsson Edenkrans, expressed the same belief in an email to the hotel's previous owners on January 19: that water had been "coming in for quit[e] some time already" despite no mention from the previous owners of "major [i]ce building [up] on the roof" before transferring ownership and closing the sale. *Id*. at 195. Plaintiff's expert, Benjamin C. Borland, has testified that water intrusion damage could have occurred prior to December 31, 2021, but was not documented, *see* Dkt. 41-6 at 9–10, and that water intrusion had occurred from December 31, 2021, to January 7, 2022, *see id*.[3]

On March 11, 2022, AmGuard denied Plaintiffs' insurance claim, stating in its denial letter that "there is no coverage . . . under the AmGuard Policy for the damages asserted. . . .

---

[3] In an oral ruling on March 25, 2024, the Court excluded certain opinions from AmGuard's expert on when the damage began because his testimony relied on assumed facts that were irreconcilable with the undisputed record evidence. *See* Dkt. 63; Fed. R. Evid. 702 (the proponent of expert testimony must demonstrate that "it is more likely than not that: . . . (b) the testimony is based on sufficient facts or data; . . . (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."); *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 830–31 (9th Cir. 2001) (the "fatal problem" with the expert's opinion was that it "finds no support in the physical facts as described by the reports and other evidence in the record").

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 5

[T]he damages occurred prior to the inception of the policy . . . [the] damage is long-standing and occurred prior to you owning the property." *See* Dkt. 41-11 at 4, 6. Plaintiffs filed their complaint against AmGuard in King County Superior Court on August 19, 2022, claiming that AmGuard breached the terms of the insurance contract, acted in bad faith, and violated its obligations under Washington's Consumer Protection Act and Insurance Fair Conduct Act. *See* Dkt. 1-2. AmGuard removed the case to this Court. Dkt. 1.

## II. LEGAL STANDARDS

### A. Jurisdiction and Applicable Law

The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the opposing parties are citizens of different states. Plaintiffs claim that AmGuard is liable for damage to Hotel Roslyn exceeding $170,000, *see* Dkt. 1-2 at 8. AmGuard is a Nebraska corporation with its principal place of business in Pennsylvania, *see* Dkt. 77 at 1, while Hotel Roslyn, LLC and SKOBO, LLC are limited liability companies whose sole members Ellen Edenkrans and Nils Edenkrans are both citizens of and reside in Washington, *see* Dkt. 1 at 3. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). There is complete diversity of citizenship between the opposing parties. *See* 28 U.S.C. § 1332(c); *Johnson*, 437 F.3d at 899. Because the Court is sitting in diversity, substantive claims are governed by state law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

### B. Summary Judgment Standard

On cross-motions for summary judgment, each motion "must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)). It is "well-settled in this circuit and others that the filing of cross-motions for summary judgment,

both parties asserting that there are no uncontested issues of material fact, does not vitiate the court's responsibility to determine whether disputed issues of material fact are present." *Id*.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And a fact dispute is "material" "only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim for which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

The evidence relied upon by the nonmoving party must be able to be "presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). "'The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). Even circumstantial evidence can defeat summary judgment if inferences drawn in the non-moving party's favor are reasonable. *McLaughlin v. Liu*, 849 F.2d 1205, 1208–09 (9th Cir. 1988).

C.   **Interpretation of insurance policies under Washington law**

In Washington, interpretation of the "four corners" of an insurance policy "is a question of law, in which the policy is construed as a whole and each clause is given force and effect." *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (Wash. 2002). Insurance policies should be given a "fair, reasonable, and sensible construction," as they would be understood by the average person purchasing insurance. *Id*. Terms defined in a policy are construed as defined

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 7

and undefined terms are given their "ordinary and common meaning." *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424, 932 P.2d 1244 (Wash. 1997). "An ambiguity exists only 'if the *language on its face* is fairly susceptible to two different but reasonable interpretations.'" *Kish v. Ins. Co. of N. Am.*, 125 Wn.2d 164, 171, 883 P.2d 308 (Wash. 1994) (quoting *Wash. Pub. Util. Dists.' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam Cnty.*, 112 Wn.2d 1, 11, 771 P.2d 701 (Wash. 1989)). Ambiguities in the policy are construed strictly against the insurer. *Id.* at 170–71.

The party claiming there is insurance coverage has the burden of proving its loss falls within the scope of the policy's insured losses. *See Corliss Condo. Owners Ass'n v. Nat'l Sur. Corp.*, 631 F. Supp. 3d 942, 946 (W.D. Wash. 2022) (citing *Walla Walla Coll. V. Ohio Cas. Ins. Co.*, 149 Wash. App. 726, 730, 204 P.3d 961 (2009)). In contrast, the insurer denying coverage based on an exclusion "bears the burden of showing [the] exclusion applies." *Id*. Exclusions are construed strictly against the insurer because "exclusions from insurance coverage are contrary to the fundamental protective purpose of insurance." *Vision One, LLC. Phila. Indem. Ins. Co*, 174 Wn.2d 501, 512, 276 P.3d 300 (Wash. 2012) (quoting *State Farm Fire & Cas. Co. v. Ham & Rye LLC*, 142 Wash. App. 6, 13, 174 P.3d 1175 (2007)). Insurance policies are liberally construed to provide coverage wherever possible. *W. Nat'l Assurance Co. v. Shelcon Constr. Grp., LLC*, 182 Wash. App. 256, 261, 332 P.3d 986 (2014).

Under Washington law, when an insurance policy does not define "commencing" in relation to the beginning of damage or loss, the term "is ambiguous and must be construed against the insurer to mean that the loss or damage commenced on each identifiable instance of new damage or loss in the policy period." *Ridge at Riverview Homeowner's Ass'n v. Country Cas. Ins. Co.*, No. 21-CV-00950-LK, 2023 WL 22678, at *13 (W.D. Wash. Jan. 3, 2023) (internal quotation marks and citations omitted; collecting cases). Washington courts have held that water intrusion can "commence" progressively and incrementally, so that multiple instances

of damage could commence to result in a "cumulative" loss. *Id*. (citations omitted). To trigger coverage, the insured must "identify instances of new damage during the policy periods." *Id*. "Whether an insured can prove instances of new damage or loss during the policy period is typically a question of fact for the jury." *Id*.

### III. DISCUSSION

**A. Undisputed evidence shows at least some damage "commenced" after AmGuard's coverage began.**

AmGuard argues that it is entitled to summary judgment—and coverage was properly denied—because coverage under its policy is limited to "loss or damage commencing . . . during the policy period." Dkt. 46 at 85; Dkt. 45 at 6–10, 13–17. Plaintiffs have the burden of proving that damage occurred during the policy period to show that their claims fall within the policy's insured losses. *See Victorian Condo. Owners Ass'n v. Fireman's Fund Ins. Co.*, No. C11-1002-JCC, 2012 WL 13028242, at *2 (W.D. Wash. Oct. 2, 2012) ("The Victorian has the burden at trial of proving that [substantial structural impairment] caused by hidden decay commenced during the coverage period.").

As a threshold question, Plaintiffs contend AmGuard should be estopped from making this argument because the "commencing" policy language was not cited in AmGuard's denial letter. Dkt. 51 at 16–18. "A provision must be asserted as a basis for denying coverage, and during litigation insurers may be precluded from asserting new grounds for denying coverage." *Vision One*, 174 Wn.2d at 520. To succeed in using estoppel to prevent an insurer from asserting a new ground for denying coverage, "insureds must demonstrate either that they suffered prejudice or that the insurer acted in bad faith when the insurer failed to raise all its grounds for denial in its initial denial letter." *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 63, 1 P.3d 1167 (2000). Here, however, the Court concludes that AmGuard's argument that the damage

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 9

commenced before its policy began is not a new ground for denying coverage. Although the denial letter does not quote the "commencing" language, it identifies the policy period, notes that the policy provides "coverage for covered claims occurring during the Policy Period," and states clearly: "the damages occurred prior to the inception of the policy and for this reason we are unable to extend coverage for the property." Dkt. 41-11 at 4. The "commencing" language occurs in the provision titled "Policy Period." Dkt. 41-3. Read as a whole, the denial letter was sufficient to explain to Plaintiffs this ground for AmGuard's denial of coverage.

On the merits, the parties each contend they are entitled to summary judgment based on the undisputed facts. AmGuard argues that the only reasonable conclusion from (1) the Edenkranses' statements in the claim process that they believed the water intrusion began before they took ownership; (2) the photos showing the significant buildup of ice and snow on the roof; and (3) the fact that the first water damage was discovered only a day after the hotel changed hands, is that the damage "commenced" before its policy incepted. *See* Dkt. 45 at 6–10. Plaintiffs counter that even if some undetectable and unreported water intrusion began before December 30, *new damage* covered under the policy "commenced" every day between December 31 and January 7, and these new instances of damage indisputably triggered coverage.

Only Plaintiffs' argument is persuasive. Although AmGuard certainly cites evidence from which a reasonable jury could conclude that *some* damage commenced before the policy began, that evidence is not sufficient to show that *all* the damage commenced before the policy began as a matter of law. Conversely, while the jury may reject Plaintiffs' argument that *all* the damage commenced after AmGuard's policy incepted, undisputed facts show that *some* damage commenced during AmGuard's policy period, and that is sufficient to trigger coverage. Insurance policies should be given a "fair, reasonable, and sensible construction," *Overton*, 145 Wn.2d at 424, where terms are construed as defined and undefined terms are given their

"ordinary and common meaning." *Peasley*, 131 Wn.2d at 424. AmGuard's policy covers damage to "[t]he *interior* of any building or structure . . . [that] is caused by or results from thawing of snow, sleet or ice on the building or structure." *See* Dkt. 41-3 at 7 (emphasis added). The policy does not define "commencing." Courts in this district applying Washington law have previously held that when an insurance policy does not define "commencing" in relation to damage or loss, the term "is ambiguous and must be construed against the insurer 'to mean that the loss or damage 'commenced' on each 'identifiable instance of new damage or loss' in the policy period." *Ridge at Riverview*, 2023 WL 22678, at *13. This Court agrees with that policy construction, and there can be no question that the undisputed evidence in the record shows identifiable instances of new water damage to the interior of Hotel Roslyn after AmGuard's coverage began.

AmGuard argues that *Ridge at Riverview* should be limited to its facts as a "leaky condo" case, and that here the water damage should be considered "a single isolated event" that began before coverage commenced. *See* Dkt. 49 at 6–7; Dkt. 57 at 4–5. AmGuard contends that "[t]his is a discrete event that occurred over a finite period of days beginning in mid-December. If a damage causing event is discrete and finite, when the damages *initially* commence (i.e., begin) is the relevant inquiry." Dkt. 57 at 4 (emphasis added). But AmGuard cites nothing in either the policy or the case law that supports this construction. Nor does *Ellis Court Apts., L.P. v. State Farm Fire & Cas. Co.*, 117 Wash. App. 807, 72 P.3d 1086 (2003), upon which AmGuard relies heavily, compel this conclusion. *Ellis Court* interpreted "commence" to mean when damage began as opposed to when it "manifested" (was discovered).[4] 117 Wash. App. at 814. But that is

---

[4] In *Ellis Court*, the insurer was arguing for the "manifestation" trigger, because the damage was not discovered until after its policy had expired. 117 Wash. App. at 114. The Washington Court of Appeals construed "commence" in favor of the insured on those facts. *Id.* Here, although

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 11

not inconsistent with coverage here, where the undisputed facts show that damage began in new areas of the hotel after AmGuard's policy commenced. An example illustrates the difference: if damage was discovered on December 31 in a room where no one had been for several days, there could be a genuine factual dispute about if the damage began before the policy period started on December 30, even though it manifested after. But here, there is no dispute that new instances of interior damage began in heavily trafficked areas of the hotel (such as the common areas) several days after AmGuard's coverage had started. Because AmGuard wrongfully denied coverage for at least some of the water damage, the Court GRANTS Plaintiffs' motion for partial summary judgment on their breach of contract claim.

> **B.     AmGuard's policy does not cover "consulting fees" for the Edenkranses' father.**

AmGuard also moves for summary judgment on Plaintiffs' request for coverage of a "Consultant Fee to Manage Repairs." Dkt. 45 at 19–20. Plaintiffs' initial disclosures claimed $100,000 as the value of the consultant fee. Dkt. 46 at 263. In response to interrogatories, Plaintiffs answered that the fee was for the work of Lars Karlsson Edenkrans, the father of the Edenkrans siblings. *Id.* at 283. In depositions, however, Ms. Edenkrans admitted that she couldn't recall what her agreement was to pay her father, Dkt. 46 at 14; that she has never paid her father for these services, *id.*; that he had never submitted any invoices or timesheets to her, *id.* at 15; and that she was not sure if she would pay him if she does not recover in this lawsuit, *id*. Mr. Edenkrans, while claiming that he "expected" to be paid regardless of the outcome of the

---

coverage is triggered even using the *Ellis Court* interpretation, this Court is not bound by that interpretation where the term remains undefined and ambiguous, and the Court must follow the broader principle that ambiguities are construed strictly against the insurer.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 12

litigation, admitted that he and his children "hadn't talked about that." Dkt. 52-9 at 7.[5]

The "Extra Expense" coverage under AmGuard's policy defines "Extra Expense" as "expense incurred," and repeatedly explains that it provides coverage for expenses "incurred." *See, e.g.*, Dkt. 46 at 43 ("necessary Extra Expense *you incur* . . . that you would not *have incurred* . . .") (emphasis added). Insurance policies should be given a "fair, reasonable, and sensible construction." *Overton*, 145 Wn.2d at 424. And the party claiming there is insurance coverage for a loss has the burden of proving there is coverage under the policy. *See Corliss*, 631 F. Supp. 3d at 946. Here, Plaintiffs have not put forth evidence from which they could prove that they "incurred" the claimed expenses to Lars Karlsson Edenkrans. They have not provided any evidence that they have an enforceable agreement to pay Mr. Edenkrans or that he tracked his time contemporaneously, billed them for his work, or received payment. Plaintiffs' response brief admits the costs "have not been billed or paid." Dkt. 51 at 3.

Instead, Plaintiffs argue that the ordinary meaning of "incurred" is not billed or paid, but rather to "become liable or subject to." Dkt. 51 at 19. The Court does not disagree with this definition. *See Incur*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/incur ("to become liable or subject to") (last visited April 29, 2024); *State v. Goodrich*, 47 Wash. App. 114, 117, 733 P.2d 1000 (1987) ("'Incurred' means to become liable or subject to. Proof of payment is unnecessary before restitution is ordered, but the victim

---

[5] In opposing AmGuard's summary judgment motion on March 4, 2024, Plaintiffs submitted "second amended initial disclosures" that raised the claimed amount for Mr. Edenkrans's "Consultant Fees" to $167,995.89 and attached a spreadsheet purporting to describe the number of hours Mr. Edenkrans spent consulting in each month since the damage began. The initial disclosures deadline in this case was June 26, 2023, and the discovery cutoff was January 31, 2024. Dkt. 6, 25. Plaintiffs have made no attempt to justify their late disclosure as substantially justified or harmless under Federal Rule of Civil Procedure 37(c)(1), and the Court is not considering this evidence. In any event, the attempt to list Mr. Edenkrans's claimed hours by month still does not show that expense for any of the hours were actually "incurred" by the Plaintiffs.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 13

*must have an obligation to pay* for the medical treatment necessitated by her injury." (internal citation omitted; emphasis added)). But here, the Plaintiffs' evidence cannot establish that they have "become liable" for or have an actual obligation to pay Mr. Edenkrans. The witnesses' deposition testimony repeatedly equivocated on this point, and Plaintiffs have not produced any documentary evidence to establish such an obligation. Plaintiffs have not shown evidence from which a reasonable jury could conclude the Consultant Fees were actually "incurred," and therefore they are not covered under AmGuard's policy. The Court therefore GRANTS AmGuard's motion for summary judgment IN PART as to the "Consultant Fees" claimed by Plaintiffs.

## IV. CONCLUSION

For the reasons explained above, it is hereby ORDERED that:

- Plaintiffs' motion for partial summary judgment (Dkt. 39) is GRANTED as to their claim that AmGuard breached the Hotel Roslyn policy by denying coverage;

- AmGuard's motion for summary judgment (Dkt. 45) is GRANTED IN PART as to Plaintiffs' claim for Consultant Fees; and

- AmGuard's motion (Dkt. 45) is otherwise DENIED.

Dated this 30th day of April, 2024.

Tiffany M. Cartwright
United States District Judge